Stacy Scheff #028364
LAW OFFICE OF STACY SCHEFF
P.O. Box 40611
Tucson, AZ 85717
Ph: (520) 471-8333 – Fax: (520) 300-8033
Emails: Stacy@ScheffLaw.com; Stacy.Scheff@gmail.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Brooks #259515,<br><br>      Plaintiff,<br><br>vs.<br><br>David Shinn, Director of the Arizona Dept. of Corrections, Rehabilitation, and Reentry;<br><br>&<br><br>Centurion of Arizona, LLC, an Arizona Limited Liability Company,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIONS, AND DECLARATORY RELIEF** |

## NATURE OF THE ACTION

Plaintiff seeks injunctive and declaratory relief only against Defendants Centurion and Shinn in their official capacities. Plaintiff is an inmate with Post-Laminectomy Syndrome (also known as "Failed Back Syndrome) a chronic pain condition caused by failed surgical repairs to his back.

Plaintiff requires a treatment protocol that provides effective pain-management for a complete 24-hour cycle. At least five (5) medical providers (both in and outside prison) have prescribed Plaintiff with an effective pain-management protocol that includes an extended-release opiate. The Arizona Department of Corrections, Rehabilitation & Reentry ("ADC") and its

1

contracted, for-profit, medical care corporations, have *consistently failed to provide the effective treatment protocols to Plaintiff and have substituted known ineffective treatments*, causing Plaintiff to suffer needless physical pain, mental anguish, and emotional distress.

## JURISDICTION

1 This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 42 U.S.C. §1983.

2 Rule 65, F.R.Civ.P., grants the Court the authority to issue a preliminary injunction upon notice to the adverse party.

3 Venue is proper in the District of Arizona because the events or omissions giving rise to this claim occurred in the District of Arizona, and all Defendants are located within the District of Arizona.

## DEFENDANTS
### David Shinn, Director of ADCRR

4 David Shinn is the Director of the Arizona Department of Corrections, Rehabilitation and Reentry. Director Shinn is sued here in his official capacity.

5 Director Shinn is responsible for establishing, monitoring, and enforcing overall operations, policies, and practices (both written and unwritten) of the Arizona state prison system, which includes providing appropriate medical care to the inmates in State custody. A.R.S. §§ 31-201, 41-1604(A), 41-1608.

6 Director Shinn is responsible for overseeing the work and decisions of the contract medical providers, including Defendant Centurion of Arizona, LLC, and its staff, and has personal knowledge of the

unconstitutional deficiencies Centurion of Arizona, LLC has displayed toward inmates like Plaintiff.

7 Director Shinn is being sued in his official capacity only, for prospective injunctive relief only, to duly supervise and ensure Centurion's compliance with providing a constitutional level of care as required by the contract and Arizona statutes between the State of Arizona and Centurion.

8 Director Shinn has, at all relevant times, had actual knowledge that Centurion is not complying with the required constitutional level of care required by the contract, Arizona statutes, and the U.S. Constitution.

9 At all relevant times, Director Shinn has been aware that the medical contractor Centurion was not providing constitutionally adequate care as a matter of policy, custom, and/or practice for the purpose of making money for the private, corporate, contractor.

10 At all relevant times, Director Shinn's failure to enforce constitutionally adequate care is equal to condoning and ratifying the decisions of Centurion.

11 As a matter of law, Director Shinn's failure to enforce a constitutional level of care as required by the contract, Arizona Statutes, and the U.S. Constitution resulted in a constitutional injury to Mr. Brooks – namely denial of appropriate, constitutional medical care.

12 Director Shinn's failures as described above resulted in Mr. Brooks failing to receive the appropriate pain management recommended by his treating physicians.

13 Mr. Brooks is experiencing needless pain and suffering as a result of the denial of appropriate pain management.

14 Director Shinn knew, or should have known, that denial of adequate pain medication has resulted, and will continue to result in needless pain and suffering, and that ignoring his duties to ensure appropriate pain management would result in inmates, including Mr. Brooks, to suffer cruel and unusual punishment under the 8th Amendment to the U.S. Constitution.

15 Director Shinn has actual knowledge that Centurion is not providing adequate pain management treatment to inmates, including Mr. Brooks.

16 Denial of known, effective pain management is a serious medical need that results in the unnecessary and wanton infliction of pain.

17 Director Shinn's decision to ignore his statutory duty after the situation was brought to his attention was deliberately indifferent.

18 At all times relevant Director Shinn acted under color of law.

### Centurion of Arizona, LLC

19 Centurion of Arizona, LLC ("Centurion") is an Arizona Limited Liability Company. Under existing law, Centurion is a "person" with personal knowledge of the events in this case via its agents, employees, and sub-contractors.

20 Centurion is contracted with ADCRR to provide medical care and treatment to those housed in ADCRR prisons.

21 Centurion's responsibilities include providing prescribed medications to the housed in Arizona's prisons.

22 Centurion acts pursuant to the customs, rules, and regulations promulgated by Dir. Shinn.

23 Centurion acted under color of state law.

24 Centurion has acted pursuant to a cost-saving policy to deny Arizona's inmates with appropriate constitutional medical care.

25 Centurion's decision to not provide Mr. Brooks a constitutional level of care is an intentional, deliberate, profit-based decision.

26 Denying Mr. Brooks medication was a result of this policy.

27 The decision was made by one or more Centurion officials in a position to promulgate the policy.

## GENERAL ALLEGATIONS
### (Medical History)

28 Plaintiff has been an inmate under the custody and care of ADCRR since December 2010.

29 Prior to his incarceration, Plaintiff suffered two separate back injuries in the late 1980s and again in the early 1990s.

30 These two injuries led to years of physical therapy and several back surgeries before Plaintiff's 2008 incarceration.  In about 1998, Plaintiff underwent a discectomy – the surgical removal of a segment of the injured portion of the spine, intended to keep the disc from protruding into the spinal cord.  In 2003, Plaintiff underwent an experimental procedure placing hardware into his lower back.

31 The 2003 surgery failed, leaving Plaintiff with a medical condition called post-laminectomy syndrome (also known as "Failed Back Syndrome.")

32 Failed Back Syndrome is a debilitating chronic pain condition, which causes nerve pain and muscle spasms. Absent a medical breakthrough, the condition is permanent. It will not heal. It will not improve.

33 Additionally, Failed Back Syndrome typically worsens over time. In other words, absent proper pain management techniques, a patient's pain inevitably increases with each passing year.

34 In 2009, Plaintiff broke a vertebrate in the mid-section of his spine. This third, life-altering injury introduced yet more chronic back pain to his pre-existing diagnosis of Failed Back Syndrome.

35 Between 2013 and the present time, at least six specialists – each with years of experience in pain management – have indicated that Plaintiff's condition means that his pain will never be completely eliminated, but rather controlled and reduced with appropriate daily medications, including an opiate:

   35.a   Dr. Jane Barnwell (2013)
   35.b   Dr. Brian Page (2015)
   35.c   Dr. Elijah Jordan (2016)
   35.d   NP Bridget Barron (2018)
   35.e   Dr. Jeffrey Fudin (2019)
   35.f   Dr. Ayodeji "Greg" Ladele (Regional Medical Director for Corizon Health) (2019)

36 Upon information and belief, Defendants Director Shinn and Centurion are personally aware of the above-described medical conclusions of the five above-enumerated medical professionals.

37 In 2013, Plaintiff was taken off of Tramadol, as it was deemed ineffective in treating Plaintiff's pain.

38  Plaintiff was then successfully placed on twice daily low dose, 15 mg Morphine Sulphate extended release tablets (administered morning and evening).

39  The prescription was eventually changed to 30 mg Morphine Sulphate extended release tablets (administered morning and evening) along with a 15 mg instant release morphine tablet at noon & 9:00PM.

40  This combination worked well for Plaintiff in 2015.

41  Opiates must be titrated upwards over time in order to maintain the same efficacy in pain management.

42  On January 29, 2013, Plaintiff was evaluated by outside physician, Dr. Jane Barnwell in Flagstaff, who prescribed morphine sulphate at 15mg, twice per day, and gabapentin tapered up to 300mg twice per day.

43  Plaintiff was transferred to ASPC Yuma, and did not receive his prescriptions until September 8, 2013, after an emergency where Plaintiff was in acute distress due to the pain. *Id.* Plaintiff then received the ER morphine.

44  From September 2013, through June 11, 2015, Plaintiff was effectively treated for his chronic pain condition with low dose morphine.

45  Plaintiff was repeatedly given disciplinary tickets for having opiates in his system, despite Corizon medical staff informing ADC security staff that this was to be expected, and not the result of illegal activity.

46  On June 11, 2015, Plaintiff was transferred to a maximum custody yard as a result of the disciplinary tickets being upheld by then-Director Charles Ryan.

47 On June 12, 2015, Plaintiff was wrongfully, abruptly, and intentionally cut off from his effective pain management medication.

48 When Defendants resumed delivery of medications to Plaintiff, Defendants delivered Codeine/Tylenol pills.

49 For a couple of days, Plaintiff was delivered one Codeine/Tylenol pill morning and night, but the medication was ineffective.

50 Shortly thereafter, the prescription was tapered up to 2 Codeine/Tylenol pills morning and night, but the medication was still ineffective.

51 On July 14, 2015, Plaintiff was taken to see Dr. Brian Page from Advanced Pain Management.

52 Dr. Page noted in his records that the Codeine/Tylenol pills were ineffective.

53 Codeine is a "low efficacy opiate drug" that is not a pain reliever in itself.

54 Typically, Codeine is used to control coughs or for dental pain.

55 According to GoodRX.com, long-term use of Codeine/Tylenol "is not recommended for chronic pain management" and should only be used for short term pain management.

56 Treating severe chronic pain with Codeine/Tylenol pills is outside of the standard of care.

57 Dr. Page prescribed twice daily low dose, 15 mg Morphine Sulphate extended release tablets (administered morning and evening) as well as twice daily 300 mg Gabapentin.

58 Dr. Page noted that Plaintiff's opioid risk assessment was 1 (low risk).

59 Defendants Corizon and its medical staff ignored or refused to follow Dr. Page's twice daily low dose, 15 mg Morphine Sulphate extended release tablet prescription.

60 Defendants have refused to explain why they will not provide the prescribed Morphine Sulphate extended release tablets.

61 On December 5, 2018, Plaintiff was seen at Maricopa Integrated Health Orthopedic Clinic by Physician's Assistant Bridget Barron as his first orthopedic follow up since fracturing his T-12 vertebrae on March 25, 2009.

62 After evaluation of Plaintiff's thoracic area, Physician's Assistant Barron ordered the following: 100 mg ER BID MS Contin 2X daily; 10 mg Baclofen 3X daily; Physical Therapy; Thoracic MRI.

63 Former ADC medical provider Corizon failed to provide the Plaintiff with the pain management prescription order by Physician's Assistant Barron and only completed the Thoracic MRI.

64 Review of the MRI confirmed Plaintiff's hemangioma within his T-9 vertebrae.

65 At no point did ADCRR, former contracted medical provider Corizon, or current contracted medical provider Centurion or Centurion employees inform Plaintiff of the pain management protocol ordered by Physician's Assistant Barron at the December 5, 2018, orthopedic follow-up appointment.

66 Despite PA Barron's recommendation, NP Weigel continually changed MS Contin dosing, crushed medications against warnings, abruptly switched to Tramadol which had previously proven to be ineffective and

ordered a 5th epidural after 4 debilitating and unsuccessful prior epidural procedures.

67 On July 1, 2019, Centurion of Arizona, LLC took over the inmate correctional healthcare services contract from Corizon.

68 On August 26, 2019, Centurion Nurse Practitioner Weigel ("NP Weigel) stated to Plaintiff that Orthopedic PA Barron ordered 100mg MS Contin tablet once daily and 10mg Baclofen once daily.  There is no record confirming this assertion.

69 This change in medication was immediately prior to Plaintiff's deposition.

70 On 9/10/2019, Plaintiff was deposed.

71 On information and belief, Plaintiff's medication was intentionally changed so that Plaintiff would be in withdrawals during the deposition.

72 Ultimately, NP Weigel ordered 100mg MS Contin tablet once daily and Baclofen 20mg three times daily.

73 Plaintiff asked NP Weigel to contact Physician's Assistant Barron to clarify frequency of dosing.

74 Plaintiff advised NP Weigel that his pain had been successfully managed in 2013 with 90mg MS Contin daily, administered in smaller dosing increments – early AM, midday, early evening, and 8:00 PM.

75 Plaintiff requested to resume the effective 2013 schedule.

76 This request was denied, and Plaintiff was administered 100 mg of MS Contin once a day, which only lasted 6-8 hours – leaving plaintiff in excruciating pain and misery for the remainder of the day and night.

77 The 100mg of MS Contin, once-a-day was abruptly stopped after two days when NP Weigel dropped the dose to 40mg of extended-release MS Contin, and began 30mg of instant-release morphine twice daily.

78 Plaintiff filed numerous Health Needs Requests ("HNR"), pleading to change improper AM dosing from instant-release to extended-release, explaining that it caused daily spikes and medication withdrawal, and intractable pain.

79 On or about September 1, 2019, NP Weigel changed the Baclofen to 10mg, twice daily.

80 Plaintiff made an additional request of NP Weigel if he could be administered MS Contin under the brand name Kadian which is a once-a-day pill formulated to provide 24 hour extended-release pain relief.

81 According to a July 13, 2020 drug prescription order, Kadian was in fact ordered for the Plaintiff, but was discontinued on July 15, 2020 before it was administered to the Plaintiff.

82 NP Waszkiewicz claimed that Plaintiff was ineligible to receive 24-hour relief because Plaintiff was not housed on a medical yard.

83 Plaintiff has been told by numerous medical providers over the years that they hate to administer morphine because it requires strict documentation.

84 On March 9, 2021, Plaintiff was transferred to Manzanita unit at Tucson complex.

85 Centurion Nurse Practitioner Elliot ("NP Elliot") became Plaintiff's primary provider.

86 On March 31, 2021, NP Elliot abruptly discontinued Plaintiff's Baclofen despite FDA Black Box Warning not to stop abruptly.

87 NP Elliott claimed that Plaintiff's March 22, 2021 blood lab showed no presence of Baclofen.  Plaintiff explained that this was because only 10mg of Baclofen had been administered 12 hours prior to the blood draw, and only lasts 2-5 hours in the blood.

88 Plaintiff advised NP Elliot regarding the FDA Black Box Warning not to abruptly stop provision of Baclofen.

89 NP Elliot denied there was such a warning associated with Baclofen.

90 Plaintiff requested NP Elliot review the Black Box Warning related to Baclofen.

91 NP Elliott printed the Black Box Warning for Baclofen and presented it to Plaintiff and continued to maintain there was no Black Box Warning associated to the abrupt discontinuation of Baclofen.

92 According to the National Institute of Health's National Library of Medicine's National Center for Biotechnology Information:

> The FDA requires a black box warning for baclofen. Abrupt withdrawal of intrathecal baclofen may occur in patients using the drug over 2 months. It may result in a hypermetabolic state with hyperpyrexia, impaired mental status, muscle rigidity, and severe rebound spasticity, potentially advancing to rhabdomyolysis and multi-organ system failure. The symptoms improve upon recommencing of baclofen by a similar dose as before the interruption. Withdrawal most commonly occurs because of a delivery system problem. The patient and caregiver must understand the importance of monitoring the pump to prevent withdrawal events. Abrupt discontinuation of oral baclofen therapy might cause seizures and hallucinations. Gradual dose reduction is recommended to prevent withdrawal symptoms.[1]

---

[1] https://www.ncbi.nlm.nih.gov/books/NBK526037/

93 Plaintiff immediately began suffering withdrawal symptoms from the sudden denial of Baclofen.

94 On March 31, 2021, Plaintiff's mother contacted ADCRR Health Services Contract Monitoring Bureau Program Evaluation Administrator Vanessa Headstream and advised Ms. Headstream of NP Elliot's abrupt discontinuation of Plaintiff's Baclofen prescription, the Black Box Warning, and the withdrawal symptoms suffered by the Plaintiff.

95 On April 1, 2021, Vanessa Headstream, the Health Services Contract Monitor for ADCRR, notified Plaintiff's mother that Baclofen had been reordered for Plaintiff with an effective date of April 3, 2021.

96 NP Elliot reinstated the Baclofen prescription at a lower dose for one (1) week and then again cancelled the prescription.

97 On April 5, 2021, a settlement conference was held in *Brooks I.*

98 On information and belief, NP Elliott discontinued the Baclofen on March 31, 2021 in order to put Plaintiff into withdrawals for the settlement conference.

99 On April 13, 2021, Plaintiff submitted an ADCRR Health Needs Request form ("HNR") requesting reinstatement of the Baclofen prescription explaining that the Baclofen had been integral to an effective pain management protocol.

100 On April 18, 2021, Plaintiff received a response to the HNR from Centurion medical personnel stating, "Your provider has discontinued Baclofen."

101  Since Plaintiff's arrival at Manzanita unit on March 9, 2021, NP Elliot has repeatedly attempted to persuade Plaintiff to substitute psychotropic medications in lieu of the effective MS Contin and Baclofen prescription, despite NP Elliot being aware that psychotropic medications are ineffective and have manifested a number of negative side-effects in the Plaintiff.

102  On June 9, 2021, Plaintiff filed an HNR regarding recent inconsistent MS Contin dosing, with up to 15 hours between doses.

103  The response to the 6/9/2021 HNR was that the Baclofen was discontinued because it did not show in Plaintiff's bloodwork.

104  On June 11, 2021, Plaintiff filed another HNR stating that the 6/9/2021 HNR was regarding MS Contin, not Baclofen.

105  The response to the 6/11/2021 HNR was, "provider review".

106  On June 15, 2021, NP Elliott informed Plaintiff that his erratic dosing will likely continue due to staffing shortages.

107  NP Elliott also stated that the Baclofen was discontinued because she feels it is not indicated.

108  Plaintiff is subjected daily to extraordinary physical pain, mental anguish, and emotional distress as a direct and proximate result of the deliberately indifferent acts and omissions of Defendants Director Shinn and Centurion.

### SPECIFIC DEFENDANT ALLEGATIONS
### Director David Shinn

109  ADCRR's Director must follow Arizona's statutes dictating the Director's duties.

110 Defendant David Shinn ("Shinn") is and was ADC's Director at all times relevant.

111 Director Shinn voluntarily accepted the position and accompanying duties.

112 Director Shinn voluntarily accepted the statutory duty to provide medical and health services set out in ARS 31-201.01(D).

113 Director Shinn has the right to charge inmates reasonable rates for their health care treatment as set out in ARS 31-201.01(H).

114 Plaintiff has agreed to pay for effective pain control treatment.

115 Director Shinn agreed as part of the Parson's settlement to make sure that chronic pain conditions are effectively treated without ADC contracted medical providers arbitrarily cutting off medication.

116 Director Shinn has failed to ensure that plaintiff has received his prescribed pain medication as required by his statutory duty as Director of the ADCRR and the Parson's settlement.

117 Director Shinn knew about plaintiff's chronic pain condition and that he was being prescribed short-term pain medication as opposed to long-term pain medication.

118 Director Shinn had a right and duty to make sure that plaintiff was treated with appropriate medical treatment including treatment with long-term pain management medication.

119 Director Shinn did not take any steps necessary to ensure that plaintiff was receiving the proper medication, once he had personal knowledge that Plaintiff was being treated inappropriately.

120 Director Shinn has failed to ensure that plaintiff has received his prescribed pain medication.

121 Director Shinn was/is deliberately indifferent to Plaintiff's serious medical conditions.

122 As a direct and proximate result of Director Shinn's deliberate indifference, Plaintiff has suffered extraordinary physical pain, mental anguish, and emotional distress daily.

123 On October 21, 2019, Defendant David Shinn became the Director of the Arizona Department of Corrections.

124 At the time David Shinn became the Director of the Arizona Department of Corrections, he was placed on actual and constructive notice of the *Parsons, et al., vs. Ryan, et al., CV 12-00601-PHX-DJH (Parsons, et al, vs. Shinn, et al. CV 12-00601-PHX-DJH)* class-action matter.

125 Director Shinn was on actual and constructive notice of the Stipulated Agreement dated October 9, 2014 entered into by former ADCRR Director Charles Ryan and the Plaintiff class in the *Parsons* matter.

126 Director Shinn was made aware of ADCRR's and the contracted medical provider's failures to comply with the October 9, 2014, Stipulated Agreement entered in the *Parsons* matter.

127 On February 24, 2021, the Honorable Roslyn Silver ordered the second round of contempt sanctions against Director Shinn for failing to meet the terms of the October 9, 2014, Stipulated Agreement in the *Parsons* matter.

## Centurion of Arizona, LLC

128 Centurion is contracted with ADCRR to provide medical care and treatment to those housed in ADCRR prisons.

129 Centurion's responsibilities include providing prescribed medications to the housed in Arizona's prisons.

130 Centurion voluntarily accepted the position and accompanying duties.

131 Centurion is on actual and constructive notice of Plaintiff's serious medical condition.

132 Centurion is on actual and constructive notice of the medical evaluation and pain management recommendation of Maricopa Integrated Health System Orthopedic Specialist, Bridget Barron, PA.:

> Morphine (MS Contin) 100 mg CR tablet. Take 100 mg by mouth 2 times daily. Baclofen (Lioresal) 10 mg tab. Take 10 mg by mouth 3 (three) times daily and Physical Therapy.

133 Centurion is on actual and constructive notice of the medical evaluation Dr. Jeffrey Fudin, PharmD, DAIPM, FCCP, FASHP, FFSMB.

134 Centurion is on actual and constructive notice of the Plaintiff's medical records which detail Plaintiff's serious medical needs as well as effective and ineffective treatment protocols.

135 Centurion has intentionally and deliberately failed to ensure that plaintiff has received his prescribed pain medication.

136 Centurion was/is deliberately indifferent to Plaintiff's serious medical conditions.

137 As a direct and proximate result of Centurion's deliberate indifference, Plaintiff has suffered extraordinary physical pain, mental anguish, and emotional distress daily.

## COUNT ONE - DECLARATION

138 The practice of denying Plaintiff adequate pain management is unconstitutional for the following reasons:

138.a    At all relevant times, Defendants were aware that this practice was cruel and unusual.

138.b    At all relevant times Defendants were aware that Plaintiff was never sentenced to suffer preventable pain.

138.c    At all relevant times, Defendants made a conscious decision to allow Plaintiff to suffer preventable pain.

139 Therefore Plaintiff is entitled to a Declaration that Defendants have violated his right to be free of cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution.

## COUNT TWO – PRELIMINARY INJUNCTION

140 The practice of denying Plaintiff adequate pain management threatens to deprive Plaintiff of his right to be free of cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution through the end of the trial and any appeals in *Brooks I*.

141 Therefore Plaintiff is entitled to a Preliminary Injunction in order to allow him to participate in the litigation of both *Brooks I* (including any appeals), and this case without suffering from withdrawals and preventable pain.

## COUNT THREE – PERMANENT INJUNCTION

142 Plaintiff's pain will never be cured.

143 The practice of denying Plaintiff adequate pain management threatens to deprive Plaintiff of his right to be free of cruel and unusual

punishment pursuant to the Eighth Amendment to the United States Constitution for the remainder of his time incarcerated under the jurisdiction of Defendant ADC.

144 Therefore Plaintiff is entitled to a Permanent Injunction in order to allow him to serve out the remainder of the time that he is incarcerated by Defendant ADC without suffering from withdrawals and preventable pain.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff prays for the following:

1. Preliminary injunctive relief in the form of an Order that Defendants maintain Plaintiff on the prescribed, effective medication protocol that provides 24-hour pain relief consistent with the recommendations of Dr. Jeffrey Fudin and Maricopa Integrated Health Orthopedic Clinic Physician's Assistant Bridget Barron through the end of the trial and any appeals in *Brooks I*.
2. Permanent injunctive relief in the form of an Order that Defendants maintain Plaintiff on the above protocol for the remainder of his time incarcerated under the jurisdiction of Defendant ADC.
3. Declaratory and injunctive relief that Defendants are violating Plaintiff's Eighth Amendment rights.
4. Attorney's fees pursuant to 42 U.S.C. §1988.
5. Plaintiff's costs and reasonable expenses.
6. Any other relief this Court deems just, proper, and fair.

## VERIFICATION

I, Jesse Brooks, verify that the facts contained within this Complaint are true and accurate, except those facts asserted on information and belief, and as to those facts, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this Verification was executed on July 6, 2021.

_____
JESSE BROOKS, Plaintiff