**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Brooks, | No. CV-21-00265-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| Centurion of Arizona LLC, | |
| Defendant. | |

Before the Court is Plaintiff's "Rule 59 Motion for New Trial and/or to Alter or Amend the Judgment" (the "Motion"). Doc. 116. Plaintiff seeks Rule 59 relief related to two Orders denying preliminary and permanent injunctive relief, (the "September Order"), and consolidating the hearing with a trial on the merits (the "October Order"). Docs. 112, 114. Defendant Centurion ("Centurion") opposes the Motion. Doc. 117. For the following reasons, the Court denies the Motion.

**I.   Background**

Plaintiff is an inmate confined by the Arizona Department of Corrections, Rehabilitation, and Reentry ("ADCRR"). He brought this pro se civil rights Complaint alleging medical care claims under the Eighth Amendment. Doc. 1. Contemporaneously, Plaintiff filed an ex parte "Emergency Motion for Preliminary and Permanent Injunction" (the "First Motion for Injunctive Relief"). Doc. 3. The Court denied the First Motion for Injunctive Relief as moot and ordered Centurion to answer the Complaint. Doc. 21. Later, Plaintiff filed a second motion for preliminary injunction ("Second Motion for Injunctive Relief"). Doc. 26.

The First and Second Motion for Injunctive Relief requested similar relief. The First made a general request for certain pain medications. Doc. 26 at 3 ("Mr. Brooks seeks only injunctive relief to ensure that his other two categories of chronic pain – neuropathic and muscle spasms – are addressed throughout the day with an appropriate muscle relaxer (Baclofen) and an appropriate antiepileptic (Gabapentin)"). In his Second Motion for Injunctive Relief, Plaintiff sought "[a] 24-hour formulation of morphine twice a day at 45 mgs twice a day [totaling 90 mg of morphine a day], an appropriate muscle relaxant consistent with [a recommendation from his expert witness F. Michael Ferrante, M.D.], and a neuropathic pain medication [including Gabapentin] to treat the nerve pain[.]" Doc. 96 at 11.

The Court held a bifurcated hearing on February 16, 2022, and March 2, 2022 (collectively the "Hearing"), where it heard testimony and took evidence. Docs. 84, 97. Following the Hearing, the Court permitted the parties to file written closing arguments, objections, and amended proposed Findings of Fact and Conclusions of Law. *See* Docs. 56, 57, 91, 93, 94, 95, 96. In his written closing argument, Plaintiff asked this Court to consolidate the Hearing on the second motion for a preliminary injunction with a trial on the merits pursuant to Rule 65 of the Federal Rules of Civil Procedure. Doc. 95 at 14 ("This Court has heard the evidence. I do not know what additional evidence can be produced beyond the fact witnesses and expert testimony. This court should consider consolidating this hearing with a trial on the merits.") On September 28, 2022, this Court ruled on the Second Motion for Injunctive Relief. Docs. 112. Following an objection period, after the Court noticed its intent to consolidate the Hearing with a trial on the merits, the Court consolidated the matters under Fed. R. Civ. P. 65. Doc. 114. Judgment entered for Centurion on October 7, 2022. Doc. 115.

Plaintiff moves for Rule 59 relief asserting that the Court must grant a new trial or alter the judgment to correct manifest errors of fact and law. *See* Doc. 116 at 1–2. Plaintiff argues that the Court's judgment is "based upon a misreading or misunderstanding of significant facts and law" which "creates a situation that is manifestly unjust." *Id.*

## II.  Legal Standard

After a nonjury trial, a new trial may be ordered "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). Rule 59(a)(1)(B) does not specify the grounds upon which a motion for new trial may be granted. Instead, a court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). The Ninth Circuit recognizes three grounds for granting a new trial after a bench trial: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 n.4 (9th Cir. 2007). "The burden of showing harmful error rests on the party seeking the new trial." *Boston Scientific Corp. v. Johnson & Johnson*, 550 F.Supp.2d 1102, 1110 (N.D. Cal. 2008) (citation and internal quotation marks omitted).

Similarly, the Ninth Circuit has described four circumstances where granting a motion to alter or amend a judgment is justified under Rule 59(e): (1) where the motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) where the motion is necessary to present newly discovered or previously unavailable evidence; (3) where the motion is necessary to prevent manifest injustice; or (4) where the amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Relief under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (citing 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been made prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted); *see Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

## III.  Analysis

Plaintiff raises three factual issues. Doc. 116 at 2–6. First, he argues there is evidence to show PA Barron issued a 100mg "prescription or recommendation" to

Centurion based on Plaintiff's testimony, records that show Plaintiff received 100mg of morphine following PA Barron's recommendation, and records that show NP Weigel "explained PA Barron's medication change recommendation to Mr. Brooks." Doc. 116 at 2–3. Second, Plaintiff argues that the Court relied on false or misleading testimony to discount Plaintiff's active and ongoing sciatic pain in denying his request for Gabapentin. *Id.* at 3–6. Third, the Court understands Plaintiff to argue that the Court did not properly evaluate witness credibility based on their alleged false statements made during the Hearing and contained in sworn affidavits. *Id.* at 6. Plaintiff concludes that the Court erred as a matter of law by finding that Centurion did not act with deliberate indifference when it chose "to deny treatment that alleviates an inmate's significant pain." Doc. 116 at 6–7.

In response, Centurion argues the Motion should be summarily denied as it is no longer responsible for providing Plaintiff's care and treatment. Doc. 117. Specifically, there is no existing or ongoing constitutional violation that an injunction could remedy because Centurion is no longer the healthcare services provider for ADCRR inmates. *Id.* at 1. Because the current healthcare provider is non-party NaphCare, Inc., Centurion argues that the Motion is both moot and futile. *Id.* at 2. Centurion does not address the Motion's substantive arguments. *See generally, id.*

### A. Mootness

Injunctive relief requires proof "that there is 'a contemporary violation of a nature likely to continue[.]'" *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (*quoting United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952)). Because Centurion is no longer the medical provider for ADCRR, Plaintiff may not seek injunctive relief against it. Under Federal Rule of Civil Procedure 20(a)(2), however, the Court could join NaphCare, Inc., as a defendant to Plaintiff's claim for injunctive relief purposes. *See Rogers v. Shinn*, Case No. CV18-00162, Doc. 108 at 2 n.2 (D. Ariz. Jan. 13, 2020) (noting that "[b]ecause the Director of the ADC bears the responsibility of executing injunctive relief, the addition of Centurion may be unnecessary, but the Court finds it equitable to include Centurion in further proceedings regarding injunctive relief it may ultimately have to provide"); *see also*

*Thompson v. Corizon Health Care Inc., et al.*, Case No. CV19-02841, Doc. 75 (D. Ariz. Jan. 27, 2020) (directing clerk to join Centurion, the prison's current contracted healthcare provider, as defendant for purposes of injunctive relief); *see Robbins v. Ryan, et al.*, Case No. CV18-2343, Doc. 84 (D. Ariz. Oct. 25, 2019) (same). For this reason, the controversy is not mooted although the claims against Centurion may be. The Court considers the arguments raised by Plaintiff.

### B. Morphine

The Second Motion for Injunctive Relief argued that Plaintiff's requests for adequate pain medication were repeatedly ignored despite an increased morphine recommendation by orthopedic specialist PA Bridget Barron ("PA Barron") in 2018 and 2019. Doc. 26. Plaintiff testified to his December 2018 and August 2019 visits with PA Barron, his conversations with NP Weigel, and offered certain documents produced from those visits and his interpretations thereof. *See generally*, Doc. 84.

Neither PA Barron nor NP Weigel were witnesses at the Hearing. Although the Court quashed Plaintiff's subpoena for NP Weigel because she was not disclosed within the period or manner specified by the Court, (s*ee* Doc. 76), Plaintiff did not subpoena PA Barron for the Hearing, (*see* Doc. 65). After considering the evidence, the Court concluded PA Barron did not prescribe or recommend any specific medication, Plaintiff failed to provide proof supporting a *current* specialist's 100mg morphine prescription or recommendation, and thus Centurion did not ignore a recommendation from a treating specialist. *See* Doc. 112 at 12–14 ("Plaintiff has offered no medical opinion from any treating source to corroborate his interpretation."). The Court also noted that treating individuals, such as NP Redwine, did not interpret PA Barron's notes as a medical recommendation. *Id.*

In his Motion, Plaintiff reiterates his previous arguments, indicates that he "affirmatively testified that a recommendation was made… [and] that NP Weigel complied with the recommendation[,]" and offers a single medical record entry purporting to show that NP Weigel ordered a new prescription based on PA Barron's recommendation on or

about September 2, 2019. Doc. 116 at 2–3. Plaintiff's arguments are unavailing for several reasons. To the extent the proffered medical record shows NP Weigel ordered 100mg morphine for Plaintiff on or about November 2, 2019, there are no contemporaneous medication administration records showing that a 100mg morphine dosage ever became part of Plaintiff's chronic pain treatment. Similarly, in his affidavit, Plaintiff indicated that under NP Weigel's care, his morphine treatment remained 30mg instant release in the morning and 30mg extended release in the evening for several months including during November 2019. (Doc. 82, Exh. 1, ¶ 14; Doc. 26 at 21 ¶¶ 13–14 ("Despite repeated requests to change 30mg MS to extended release versus instant release, Centurion outright refused, and continued to give me the instant release MS from March 9, 2019 through January 4, 2021.") Again, Plaintiff offers no proof showing the existence of a current prescription to support his assertion. Nor does Plaintiff offer any new evidence that PA Barron prescribed any specific medication in 2018 and 2019. Plaintiff has not shown a manifest error of fact.

As to deliberate indifference, the Court explained that the issue is not whether Plaintiff's morphine should be tapered or discontinued but whether Centurion's refusal to increase Plaintiff's current morphine dosage is "medically unacceptable under the circumstances" and done in "conscious disregard of an excessive risk" to Plaintiff's health. Doc. 112 at 15 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). To that end, Plaintiff does point to any newly discovered evidence or change in controlling to show that Centurion's treatment decisions were medically unacceptable under the circumstances.

**C. Gabapentin**

Plaintiff alleges that NP Elliott and NP Redwine, "provided inaccurate and/or intentionally misleading testimony which this Court relied on" to conclude that Gabapentin was not medically indicated or necessary for Plaintiff. Doc. 116 at 3–4. According to Plaintiff, the record shows that sciatica, was an active and ongoing health problem supported by Plaintiff's testimony and listed on every Health Services Encounter since May 18, 2018. *Id.* at 3. In the September Order, the Court explained:

> According to NP Elliott, Plaintiff has no evidence of neuropathy, trigeminal

- 6 -

> neuralgia, or uncontrolled seizures. (Doc. 97 at 31.) NP Elliott testified that Gabapentin was not medically indicated or necessary for Plaintiff. (*Id.*) Similarly, NP Redwine testified that Plaintiff had no diagnosed neuropathy and that Gabapentin was not medically indicated for Plaintiff. (Doc. 84 at 84.)

Doc. 112 at 22–23.

A review of the record shows that Plaintiff did not raise the terms "sciatica," "sciatica diagnosis," or "sciatic pain" in his Second Motion for Injunctive Relief, (*see* Doc. 26), or at the Hearing, (*see* Docs. 84, 97). Plaintiff's sciatica diagnosis is not mentioned in Dr. Ferrante's expert witness opinion, (*see* Doc. 26-1), in Dr. Ferrante's expert witness testimony (*see* Doc. 92-1), or in Plaintiffs' closing arguments (*see* Doc. 95). Plaintiff contends that he complained about neuropathic pain and this includes his sciatica as recorded in a March 29, 2021, appointment.[1] Doc. 116 at 3. Because his sciatic pain is nerve pain and was a documented health problem, Gabapentin is required according to Plaintiff. These arguments were never raised or addressed on the cross-examinations of either NP Elliott or NP Redwine. *See* Doc. 84 at 97–120; Doc. 97 at 33–52. A Rule 59 Motion does not allow Plaintiff to raise evidence that could have been raised prior to entering Judgment. *See Exxon Shipping Co.*, 554 U.S. at 485 n.5. That Plaintiff failed to raise arguments related to sciatica is not "newly discovered evidence."

Even if the Court considered the sciatica diagnosis, it would not alter its conclusion whether Gabapentin was medically indicated or necessary. The Court relied on Centurion's expert witness, Dr. Thomas Fowlkes, who explained that Gabapentin is an anticonvulsant sometimes used for the treatment of chronic pain, although it does not have that FDA indication. Doc. 97 at 81. Relatedly, NP Elliott and NP Redwine testified that Gabapentin *could* be used to treat neuropathy, trigeminal neuralgia, and uncontrolled seizures. Doc. 112 at 22. The September Order ultimately found, without validating or invalidating any diagnosis, that:

> Plaintiff offers no medical opinion from a *current treating medical source* to

---

[1] Plaintiff does not provide a citation to the record regarding the March 29, 2021 appointment. *See* Doc. 116 at 3.

- 7 -

> support that Gabapentin is medically indicated or necessary. That Plaintiff was prescribed Gabapentin previously does not support his instant request.

*Id.* at 22–23. Defendants did not act with deliberate indifference by failing to prescribe Gabapentin.

### D. Witness Credibility

The Court also denies Rule 59 relief to the extent Plaintiff challenges NP Redwine and NP Elliott's credibility. Plaintiff effectively ask that the Court consider only the facts as asserted by him. Specifically, Plaintiff argues that NP Redwine[2] and NP Elliott offered inaccurate or intentionally misleading testimony. For example, with respect to NP Elliott, Plaintiff asserts:

> For example, NP Elliott's Declaration falsely portrayed Mr. Brooks' compliance with physical therapy exercises as meaning Mr. Brooks' pain was insignificant. She described Mr. Brooks as weightlifting, but then admitted there were no weights. She described seeing Mr. Brooks do pull-ups – which was an assigned physical therapy exercise. She described Mr. Brooks walking around the yard. Again, this was Mr. Brooks' assigned physical therapy. Yet she did not disclose that what she saw was Mr. Brooks doing his physical therapy. NP Elliott also falsely claimed that Mr. Brooks had access to a TENS unit when a TENS unit was not available to him. (Day 2 at 47:14-52:5).

Doc. 116 at 5.

On direct examination, NP Elliott characterized Plaintiff's pain as non-excruciating, with observed physical activity suggesting his pain was sufficiently managed, and on redirect clarified that she observed Plaintiff lifting boxes, pushing carts, and moving hospital beds. Doc. 97 at 62–64. Specifically, NP Elliott testified:

> Q. Okay. Earlier you testified regarding the goal of pain management, that the goal of pain management is to restore the patient to a functional level. Is that an accurate description?

---

[2] Plaintiff seems to assert that NP Redwine's testimony was unreliable because she failed to characterized sciatica as neuropathic pain and made certain statements regarding the availability of the TENS Unit. Doc. 116 at 4. "[Although] NP Redwine was not asked the same questions on cross, NP Redwine's Declaration contains similar language about the TENS unit." Doc. 116 at 5. The Court found NP Redwine's testimony regarding Plaintiff's care to be credible and reasonable.

- 8 -

> A. Always. That's always, we want to see them being able to do the exercises that the physical therapists have given them, to be able to walk well, to be able to exercise, and we want them to be able to have evidence that they can function without needing assistance.
> Q. Okay. So the fact that Mr. Brooks is able to exercise and walk around and move about is a good thing?
> A. Yes, yes, and he understood that.
> Q. His exercise and physical therapy is encouraged?
> A. Yes.
> Q. Okay. Is it indicative of excruciating pain, the fact that he's able to do those exercises?
> A. Patients that have excruciating pain that's not controlled have very difficulty even walking. They can't do pull-ups. They can't -- they can't walk laps on a yard, not when they have, you know, uncontrolled severe pain.
> Q. Okay. In your medical professional opinion, then, Mr. Brooks' pain is controlled to the point that he is at a functional level?
> A. Yes ….

Doc. 97 at 62–63. NP Elliott's testimony did not discount Plaintiff's pain as "insignificant" nor did she fail to "disclose" that Plaintiff's activities were physical therapy exercises. The Court found these observations credible.

The Court also found credible, "NP Elliott's explanation why she weaned Plaintiff off of Baclofen to be credible and medically reasonable," (Doc. 112 at 19), and "NP Elliott's declaration, which the Court finds credible when considered together with her testimony, [did] not rise to a sufficiently culpable state of mind but reflected an inaccurate understanding [regarding the availability of the TENS Unit] based on the information available to her at the time." Doc. 112 at 22. Plaintiff's disagreement with the Court's credibility determination, is not a basis for reconsideration and his arguments do not demonstrate that the Court committed clear error or that the Order was manifestly unjust.

**E. Deliberate Indifference**

Plaintiff has not raised an intervening change of controlling law and has not presented new evidence that he did not already have available to him. Furthermore, Plaintiff has not identified a need to correct a clear error or to prevent manifest injustice. Plaintiff's citations to the record demonstrate that he merely disagrees with the treatment

and medical decisions rendered. Therefore, Plaintiff is not entitled to Rule 59 relief.

**IV.   Order**

Accordingly,

**IT IS ORDERED DENYING** Plaintiff's "Rule 59 Motion for New Trial and/or to Alter or Amend the Judgment" (Doc. 116). The case shall remain closed.

Dated this 19th day of May, 2023.

_____
Honorable John C. Hinderaker
United States District Judge